### 3962.   POTTER *v.* THE STATE.

1. There was no material error of law, and the evidence authorized the verdict.
2. The alleged newly discovered testimony was merely cumulative and impeaching, and there was no error in overruling this ground of the motion for a new trial.
3. Both law and sound policy forbid the separation of juries after they are charged with the trial of a felony; but where it appears that the temporary absence of one juror, for the purpose of telephoning his sick wife, could not have been injurious to the accused, a new trial will not necessarily result.

DECIDED FEBRUARY 18, 1913.

Indictment for seduction; from Walker superior court—Judge Maddox. November 2, 1911.

*E. A. Jackson, J. E. Rosser, F. W. Copeland, Hamilton & Hutchins, Ennis & Speer,* for·plaintiff in error.

*John W. Bale, solicitor-general,* contra.

RUSSELL, J. The defendant was convicted of seduction, and his motion for a new trial was overruled. In the motion for a new trial it is alleged that the verdict is contrary to the evidence and to law, and the movant asks that a new trial be granted because of newly discovered evidence, and because J. R. Ponder, one of the jurors who tried the case, separated himself from his fellow jurors while the jury had the case under consideration, and was out of their hearing for about ten minutes, during which time he had a conversation over the telephone.

According to the evidence for the State, the prosecutrix (who, though a widow, was less than eighteen years of age) was induced by the accused to consent to sexual intercourse through her love for and confidence in him, and the act was not agreed to in consideration of a present promise of marriage, though, coincident with his solicitations, the accused more than once repeated his promise

to marry and exhibited to her a marriage license. So far as the testimony for the State is concerned, there is nothing to indicate that the intercourse was part of a mere meretricious transaction (where consent to the intercourse is based upon a promise to marry merely as a consideration) ; for it plainly appears that there was a subsisting engagement to marry, that the prosecutrix was much attached to the defendant, that he had procured a marriage license authorizing him to marry her, which was used by him to accentuate his protests of fidelity and affection, and that the injured female was virtuous, within the meaning of that term as applicable to the offense of seduction. The testimony for the State as to the courtship does not evidence the irridescent glow of such refined sentiment as would be expected in circles more exclusive socially, nor does the record disclose that the prosecutrix was wooed and won by "thoughts that breathe and words that burn," clothed in such a panoply of finished rhetoric as to expose the lover's heart in the sweet symmetry of love's first dream. The prosecutrix was only a factory girl. But it is shown, not only by her own testimony, but by the testimony of numerous witnesses besides, that for several months the defendant was a frequent visitor at her house, and almost constantly in her company, whenever she had leisure from her labors. The testimony upon that score is amply sufficient to corroborate the testimony of the prosecutrix and to satisfy the jury that the defendant succeeded in impressing her with the old, old story of love, no matter how inapt his language or how awkward his presentation of his case. The testimony authorized the jury to find that the prosecutrix, not from passion, nor to bind a bargain of marriage, but solely actuated by her affection for the defendant and her implicit confidence in his love for her, as well as in his engagement and promise to marry, yielded to the repeated persuasions of an artful seducer who heartlessly accomplished her ruin.

Upon the trial the defendant did not attempt to explain the many circumstances in proof which, outside of the testimony of the prosecutrix herself, tended to indicate his guilt. He contented himself with the following statement: "Gentlemen of the jury, I am not guilty of this. I am not guilty. That woman has run after me, but I did not have anything to do with her, and would not have; and I am not guilty." All of the other testimony introduced in behalf of the defendant was directed to the effort to prove that the

prosecutrix was not a virtuous woman, and to impeach her testimony by proof of her general bad character. So far as the testimony is concerned, the case really narrowed down to the single issue as to whether in fact the prosecutrix was a virtuous woman; and the jury resolved this issue in favor of the State.

There was no error in refusing to grant a new trial on account of the alleged newly discovered evidence; for it was either partly cumulative of evidence already introduced, as to the lewd character of the prosecutrix or as to her general reputation for veracity.

In one ground of the motion for new trial error is assigned because, during the trial of the case, and after the jury had received the charge of the court, and while they were considering the case, endeavoring to reach a verdict, J. R. Ponder, one of the jurors, separated himself from the other members of the jury, leaving them at the court-house, and came over to the hotel in La-Fayette (about one hundred feet from the court-house), and stayed away from the remainder of the jury about ten minutes, unaccompanied by the officer in charge of the jury, or by any one else, and had a conversation with some one over the telephone at the hotel, and was out of the hearing of the remainder of the jury. On the hearing of the motion for a new trial the State made a countershowing which, we think, clearly evidences that the temporary separation of the juror from his fellows could not in any way have affected the result of the trial or have been injurious to the accused. The juror whose conduct was attacked made an affidavit to the following facts, which was uncontradicted: While the jury were considering the case, they were carried to a boarding-house for supper, and, in returning to the court-house after supper, and while passing the Foster House (a hotel near the court-house), they stopped on the sidewalk, at his request, and he went to the telephone, in sight of the jury and about twenty-five feet from them. The juror's wife was sick, having given birth to a baby but a week before, and the baby was very sick. The juror said nothing over the telephone except to ask for connection with his home and inquire of his mother-in-law, who was staying at his house, as to the condition of his wife and baby. It is uncontradicted, therefore, that nothing transpired, in the way of conversation or communication with any one, which even remotely related to the case on trial; and consequently the juror's conversation could not have affected the defendant injuriously.

The members of this court favor the strictest adherence to every rule of law which in any way tends to safeguard inviolate the right of trial by jury. No practice should for a moment be countenanced if, by any possibility, it can be inferred that it may have a tendency to prejudice the rights of one accused of crime. And yet we all know that instances will arise in which it is absolutely necessary for one of the jurors to be temporarily withdrawn from his fellows. Of course, such a separation, no matter how necessary, should not be permitted without the knowledge and sanction of the presiding judge; but, as it appears from the uncontradicted testimony of the juror that he was in sight of his fellow jurors and did not speak to any one with reference to the case, we agree with the trial judge that it would be an excess of caution, and an unreasonable exercise of discretion, to grant a new trial upon this ground in this case.                    *Judgment affirmed.*